UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-4399(DSD/FLN)

Richard D. Johnson,

       Plaintiff,

v.                                                              **ORDER**

Deloitte & Touche, LLP,

       Defendant.


James H. Kaster, Esq., David Schleisinger, Esq. and Nichols, Kaster & Anderson, 80 South Eighth Street, 4600 IDS Center, Minneapolis, MN 55402, counsel for plaintiff.

Lawrence M. Shapiro, Esq. Nancy E. Brasel, Esq. and Green Espel, 200 South Sixth Street, Suite 1200, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This age discrimination in employment action arises out of plaintiff Richard Johnson's ("Johnson") termination in January 2002 as part of a reduction in force ("RIF") at defendant Deloitte & Touche, LLP ("Deloitte"). Johnson began working in Deloitte's

Minneapolis office in 1990, and was a 56-year-old senior manager[1] in the Integrated Health Group ("IHG") in January 2002.

At that time, Deloitte divided its professional services into four primary functions: (1) Tax; (2) Assurance and Advisory Services; (3) Human Capital; and (4) Solutions.  IHG was one of four groups under Human Capital, which was also broken down geographically into national, sector, cluster and office levels.  Deloitte's Minneapolis and Chicago offices constituted the Midwest Cluster of the Central Sector, with Human Capital and IHG maintaining a partner in charge at each geographic level.  At the time of the RIF, the relevant partners in charge were: Len Gray ("Gray") - Central Sector Human Capital; John Stenson ("Stenson") - Central Sector IHG; and Jim Scearcy ("Scearcy") - Minneapolis Human Capital.  In addition, Jim Whisler ("Whisler") was Johnson's advisor during 2001.[2]  (Whisler Dep. at 11.)

Human Capital leaders decided in late 2001 to implement a RIF in the Central Sector.  On November 29, 2001, Gray informed the partners in charge that Deloitte needed to eliminate fifteen to eighteen positions within Central Sector Human Capital, with an estimated thirteen coming from the Midwest Cluster.  Gray

---

[1] Senior manager is the highest ranking position before an employee is considered for promotion to director or admission to the partnership.

[2] Whisler became partner in charge of Minneapolis IHG in June 2002.

instructed the partners to develop a list for the RIF with the first criteria being employee job performance. Gray further indicated that:

> [W]e need to consider each individual's potential for long term impact on the practice and future likelihood of consistent success with our clients. This would include consideration of how an individual fits with our culture and desire for strong team play. This is a good time to take out lone wolves who we do not feel will be a good fit for the long term. Finally, proposal backlog and current chargeability. If someone is only partially busy and we don't see our pipeline filling them up soon, now is the time to move. We need to identify situations where 4 or 5 people are sharing a workload that supports 3 high performers and make a decision about which ones we can not afford to keep.

(Brasel Aff. Ex. R.)

In response to Gray's instructions, Whisler, Stenson and two others assembled independent "forced rankings" of all Minneapolis IHG employees based upon their performance in relation to other employees in the same position. The independent rankings were later consolidated into a single agreed-upon list and were based on "billable hours, sales revenue, managed revenue, long-term contribution to the practice in terms of development of new product, new consulting approach, and some subjective measures about long-term value to the practice." (Stenson Dep. at 27-30.)

According to Stenson, Johnson "was on everybody's list" for termination.[3]  (Id. at 31.)

Stenson and the Minneapolis Human Resources leader informed Johnson early in January 2002 that he was being laid off.  After Johnson's departure, Scearcy, Stenson, Whisler, Dave Thoen and Paul Stordahl ("Stordahl") took over his work.  (Scearcy Dep. at 78; Brasel Aff. Ex. S.)  Ultimately, Deloitte eliminated eighteen Central Sector positions, including eight from the Minneapolis office.  Of those eight, five came from Minneapolis IHG.  Three of those five were senior managers – each of whom was over forty years old.[4]

Johnson filed a timely charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC").  On July 21, 2005, the EEOC found probable cause that Deloitte violated the Age Discrimination in Employment Act ("ADEA") and on August 31, 2006, issued Johnson a "right to sue" letter.  (Pl. Ex. 14; Compl. ¶ 11.)

---

[3] Scearcy did not participate in the "forced rankings" but did help decide who to include in the Minneapolis portion of the RIF. (Scearcy Dep. at 68.)

[4] Within the Central Sector, seven of the eighteen terminated employees were over forty years old.  Within the Minneapolis office, four of the eight terminated employees were over forty years old.  Within Minneapolis IHG, three of the five terminated employees were over forty years old. The other two terminated senior managers were 56 and 43 years old.  The ages of the five remaining senior managers were: 40, 40, 37, 35 and 33.

Johnson initiated this action on November 1, 2006, alleging age discrimination under the ADEA and the Minnesota Human Rights Act ("MHRA"). Deloitte now moves for summary judgment.

**DISCUSSION**

**I. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be

5

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Age Discrimination

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish discrimination by showing either disparate treatment or disparate impact. See Smith v. City of Jackson, 544 U.S. 228, 232 (2005) (disparate impact); Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001) (disparate treatment and impact). Where, as here, there is no evidence of direct discrimination, the court applies the familiar burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ward v. Int'l Paper Co., 509 F.3d 457, 460 (8th Cir. 2007). Under this framework, a plaintiff must first establish a prima facie case of age discrimination. Id. The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its conduct. Id. If the defendant satisfies its burden, the plaintiff must show that the proffered reason was pretext for unlawful discrimination.[5] Id.

---

[5] MHRA age discrimination claims are analyzed under the same framework. See Ramlet v. E.F. Johnson, 507 F.3d 1149, 1152 (8th
(continued...)

**A.    Disparate Treatment**

**1.    Prima Facie Case**

To establish a prima facie case of disparate treatment where there has been a RIF, the plaintiff must show: "(1) he is over 40 years old; (2) he met the applicable job qualifications; (3) he suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's action." Ward, 509 F.3d at 460 (citation omitted).

In this case, the first three factors are uncontested. With respect to the fourth factor, Johnson has shown that of the eight senior managers in the Minneapolis IHG only the three oldest were included in the RIF and all three were over 40 years old. The court determines that this evidence alone satisfies the fourth factor.[6]  Cf. Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003) (fourth factor may be established through statistical evidence).

**2.    Legitimate Reason**

In response to Johnson's prima facie case, Deloitte argues that the RIF was an economically motivated business decision.

---

[5](...continued)
Cir. 2007).

[6] Johnson also argues that before and after the RIF Deloitte hired an inordinate number of employees outside of the protective class and that certain comments by his former supervisor and Scearcy suggest that age was a factor in his termination. The court addresses those arguments below as they relate to pretext.

Deloitte has produced evidence showing that in the fall of 2001 Central Sector Human Capital was behind its business plan and the Midwest Cluster IHG was behind its budgeted revenue and profit numbers.  Moreover, e-mails from Deloitte's management indicate that the RIF was due to economic necessity.

Deloitte further argues that Johnson was included in the RIF because of his performance relative to his peers.[7]  To support its contention, Deloitte has produced evidence showing that Johnson was one of the bottom three senior managers in the Minneapolis IHG in performance ratings in 2000 and 2001 and sales in 2001.  (See Brookman Aff. Exs. A-G; Brasel Aff. Ex. K.)  In light of these legitimate nondiscriminatory reasons, the burden shifts back to Johnson to show that they are pretext for age discrimination.

   **3.   Pretext**

"When an employer articulates a nondiscriminatory reason for an employee's discharge ... 'the factual inquiry proceeds to a new level of specificity.'"  Dammen v. UniMed Med. Ctr., 236 F.3d 978, 981 (8th Cir. 2001) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)).  In other words, "the question is much more focused: Has the plaintiff shown that the explanation extracted from the defendant by virtue of a prima facie case is a pretext for discrimination?" Hutson v. McDonnell Douglas Corp., 63

---

[7] Deloitte notes that Johnson's performance would not have led to his termination absent the RIF.

8

F.3d 771, 779 (8th Cir. 1995). Johnson contends that Deloitte's explanations for both the RIF and his inclusion in the RIF are pretextual.

Johnson first argues that the RIF was unnecessary and pretextual because: (1) Deloitte could have achieved a similar result by placing a moratorium on hiring; (2) Deloitte hired several employees before and after the RIF; (3) six months after the RIF Deloitte gave profit sharing bonuses to staff in the Minneapolis IHG; and (4) an internal e-mail indicated that the RIF was "potentially deeper than necessary." (Brasel Aff. Ex. R.) The court, however, does not "sit as a 'super-personnel' department to second guess the wisdom of a business's personnel decisions." Evers, 241 F.3d at 957. Rather, "when a company exercises its business judgment in deciding to reduce its work force, 'it need not provide evidence of financial distress to make it a "legitimate" RIF.'" Regel v. K-Mart Corp., 190 F.3d 876, 880 (8th Cir. 1999) (quoting Hardin v. Hussmann Corp., 45 F.3d 262, 265 (8th Cir. 1995)).

Johnson also maintains that the RIF was pretextual because an internal Deloitte e-mail discussing the RIF references potential "adverse impact issues." (Brasel Aff. Ex. R.) However, merely acknowledging "concern over possible litigation arising out of the termination of an age-protected employee .... does not constitute evidence of discriminatory animus." Bashara v. Black Hills Corp.,

9

26 F.3d 820, 824 (8th Cir. 1994). Therefore, Johnson has not produced evidence permitting a reasonable inference that the RIF was pretextual.

Johnson further argues that Deloitte's performance-based justification for including him in the RIF is pretextual for several reasons. First, Johnson contends that if the alleged factors had actually been relied upon, he would not have been included in the RIF.[8] Specifically, Johnson maintains that he was not one of the bottom three Minneapolis IHG senior managers in managed revenue and billable hours. Johnson further notes that he was ranked higher than other senior managers in net service revenue, client service hours and utilization rates. In addition, Johnson received performance-based bonuses and testified that three years before his termination Scearcy told him he would be promoted to a director position. Nevertheless, Johnson acknowledges that he was ranked last in sales through period ten of Deloitte's 2001

---

[8] Johnson also argues that Deloitte improperly considered an employee's potential long-term value to the practice because this factor would always weigh against older employees. However, there is no evidence of the weight the decision-makers gave to this factor that would allow a reasonable inference that it resulted in "discrimination based on an employee's membership in a protected class." Evers, 241 F.3d at 959. Moreover, "employment decisions motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors correlate with age, do not constitute age discrimination." EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 951 (8th Cir. 1999) (citations omitted).

fiscal year,[9] and that his performance reviews reflect Deloitte's ongoing concern with his sales performance.[10] Moreover, although Johnson was rated as a "Meets Expectations" employee in his 2000 and 2001 performance reviews, only one other senior manager had lower ratings. Thus, even if Johnson is correct that Deloitte placed greater emphasis on sales and performance evaluations than the other factors, this is not evidence of discrimination. Rather, it is evidence that "even capable employees are released when an employer is down-sizing." Hutson, 63 F.3d at 779.

Second, Johnson argues that comments made by his former supervisor Robert Ingram ("Ingram") and Scearcy establish pretext. Johnson testified that when he first started at Deloitte, Ingram told him that he was too old to be considered for partnership. This statement, however, is too remote in time to be indicative of

---

[9] There are thirteen periods per fiscal year, but the record only contains evidence through period ten.

[10] Johnson challenges the validity of the sales data, arguing that Deloitte improperly attributed a sale of his to another senior manager. To support his assertion, Johnson has produced a letter from a client indicating that the client thought Johnson was the lead on the sale. (Pl. Ex. 6.) Johnson's assertion, however, is based upon his own personal belief as to how the sale should have been allocated, and he has not provided sufficient evidence to create an issue of fact as to whether the sale was improperly allocated. Johnson also indicates that Deloitte began taking work away from him, but he has not produced supporting evidence or shown that this affected his job performance so that he would otherwise not have been included in the RIF. Further, Johnson notes that the sales data does not include Stordahl. Stordahl, a senior manager, however, only joined Deloitte in April 2001. Moreover, even if Stordahl had lower sales than Johnson, Johnson would still have been in the bottom three.

age discrimination. See Evers, 241 F.3d at 959. In addition, Johnson testified that on a few occasions in his last years at Deloitte, Scearcy referred to the floor area where Johnson maintained his office as the "geriatric ward." However, Johnson also testified that Scearcy was merely trying to be funny. As such, Scearcy's alleged comments are not causally related to Johnson's termination. See id. Therefore, these stray remarks do not permit a reasonable inference of discrimination.

Finally, Johnson argues that statistics establish pretext. As the court noted above, the RIF included the three oldest Minneapolis IHG senior managers, all of whom were in the protected class. Although this satisfied Johnson's prima facie case, the statistics do not permit a reasonable inference that Deloitte's explanation for Johnson's inclusion in the RIF is pretextual. Compare Taylor v. QHG of Springdale, Inc., 218 F.3d 898, 900 n.2 (8th Cir. 2000) (prima facie case does not always establish pretext) with Kehoe v. Anheuser-Busch, Inc., 995 F.2d 117, 120 (8th Cir. 1993) ("[E]vidence which is sufficient to make a prima facie case of age discrimination may also be sufficient to create a jury question on the issue of pretext." (citations omitted)). Statistical evidence is probative of pretext only insofar as it "analyze[s] the treatment of comparable employees." Hutson, 63

F.3d at 777.[11]  Here, the Minneapolis IHG decision-makers ranked Minneapolis IHG employees against each other according to peer-related performance expectations.  Thus, at a minimum, the proper group for comparison is all employees in the Minneapolis IHG.  When considered in this light, Johnson's claim is weakened because the other two Minneapolis IHG employees included in the RIF were 22 and 31 years old.  Nevertheless, such evidence may at times "cause a reasonable trier of fact to raise an eyebrow."  See MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1058 (8th Cir. 1988).  Where there are no other independent direct grounds for disbelieving Deloitte's explanation, however, such limited statistics do not permit a reasonable inference that Deloitte's explanations are pretext for age discrimination.  See id.; see also Hutson, 63 F.3d at 778.  Therefore, Johnson has failed to produce evidence permitting a reasonable inference that Deloitte's proffered nondiscriminatory reasons for his termination are pretext.  Accordingly, summary judgment is warranted on Johnson's disparate treatment age discrimination claims.

---

[11] Johnson also submitted evidence indicating that the majority of employees hired by Deloitte before and after the RIF were outside of the protected class.  (Pl. Ex. 13.)  This evidence, however, contains hiring information for positions ranging from interns to senior managers.  Therefore, because the evidence does not consider comparable employees, it is not probative of age discrimination.  Likewise, Johnson's observation that few, if any, Deloitte employees make it to retirement is unsubstantiated anecdotal evidence that does not permit a reasonable inference of age discrimination.

**B.   Disparate Impact**

Deloitte argues that Johnson did not assert a disparate impact claim in his EEOC charge or in his complaint.  Assuming, however, that Johnson properly exhausted his administrative remedies and asserted a disparate impact claim, the facts do not support such a claim.  A prima facie case of age discrimination under a disparate impact theory requires a plaintiff to "identify[] a specific employment practice and then present[] statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group."  Evers, 241 F.3d at 953 (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988)).

Johnson identifies the RIF as the appropriate employment policy and urges the court to consider statistics limited to the Minneapolis IHG senior managers.  These statistics show that one-hundred percent of the terminated employees were members of the protected group and that the percentage in the protected group fell from sixty-three percent (five of eight) before the RIF to forty percent (two of five) after the RIF.  Such statistics, however, provide little probative value because of the small sample size.

Moreover, the relevant "population in a [RIF] situation consists of workers subject to termination."  Smith v. Xerox Corp., 196 F.3d 358, 368 (2d Cir. 1999).  Here, although Deloitte decided

on an office-by-office basis who to include in the RIF, the RIF applied to the Central Sector Human Capital as a whole and was guided by the considerations set forth in Gray's instructions. Therefore, the relevant population for analysis in determining whether Johnson's age was a factor in his termination is Central Sector Human Capital.  Johnson has submitted no evidence related to the age demographics of the employees in Central Sector Human Capital that would permit comparison of the effect of the RIF on protected and nonprotected employees.  Cf. id. at 368 ("The questions to be answered are ... what is the composition of the population subject to the [RIF], what was the retention rate of the protected group compared to the retention rate of other employees, and how much of a differential in selection rates ... constitute[s] a disparate impact.")  Therefore, the court determines that Johnson has not established a prima facie case and grants Deloitte's motion for summary judgment on Johnson's disparate impact claim.

## CONCLUSION

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 19] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 3, 2008               s/David S. Doty
                                   David S. Doty, Judge
                                   United States District Court